UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA | ) | | |
| | ) | | |
| v. | ) | Cause Nos. | 1:18-CR-83-HAB |
| | ) | | 1:24-CV-418-HAB |
| BRADLEY M. COX | ) | | |

**OPINION AND ORDER**

Defendant was convicted following a jury trial of a half-dozen counts related to a scheme to extort nude images from young girls using Facebook and the Pinger texting app. He unsuccessfully challenged that conviction in this Court, the Seventh Circuit, and the United States Supreme Court. He now returns on a motion to vacate under 28 U.S.C. § 2255. (ECF No. 350). That motion is fully briefed. (ECF Nos. 357, 358). Because the Court finds no basis to set aside Defendant's conviction, the motion will be denied.

**I.      Legal Discussion**

**A.      *28 U.S.C. § 2255***

Relief under 28 U.S.C. § 2255 is reserved for "extraordinary situations." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). To proceed on a motion under § 2255, a federal prisoner must show that the district court sentenced him in violation of the Constitution or laws of the United States, or that the sentence exceeded the maximum authorized by law or is otherwise subject to collateral attack. *Id.* A § 2255 motion is neither a substitute for nor a recapitulation of a direct appeal. *Id.* As a result:

> [T]here are three types of issues that a section 2255 motion cannot raise: (1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) nonconstitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, unless the section 2255

> petitioner demonstrates cause for the procedural default as well as actual prejudice from the failure to appeal.

*Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992). Additionally, aside from showing "cause" and "prejudice" from the failure to raise constitutional errors on direct appeal, a § 2255 movant may alternatively pursue such errors after proving that the district court's refusal to consider the claims would lead to a fundamental miscarriage of justice. *Johnson v. Loftus*, 518 F.3d 453, 455–56 (7th Cir. 2008). This general rule does not apply to claims of ineffective assistance of counsel, which may be brought via § 2255 even if not pursued during a direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003).

**B.**     *IAC Standard*

Many of Defendant's arguments raise ineffective assistance of counsel ("IAC"). To make out a successful ineffective assistance of counsel claim, Defendant must show that: (1) his counsel's performance fell below an objective standard of reasonableness; and (2) the deficient performance so prejudiced his defense that it deprived him of a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 688-94 (1984).

> With regard to the performance prong, [the] defendant must direct us to the specific acts or omissions which form the basis of his claim. The court must then determine whether, in light of all the circumstances, the alleged acts or omissions were outside the wide range of professionally competent assistance.

*United States v. Trevino*, 60 F.3d 333, 338 (7th Cir. 1995). Moreover, claims that an attorney was ineffective necessarily involve inquiries into an attorney's trial strategies, which in turn requires facts which usually are not contained in the trial record. Thus, many trial determinations, like so many "other decisions that an attorney must make in the course of representation[, are] a matter of professional judgment." *United States v. Berkowitz*, 927 F.2d 1376, 1382 (7th Cir. 1991). Thus,

2

the Court must resist a natural temptation to become a "Monday morning quarterback." *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

> It is not our task to call the plays as we think they should have been called. On the contrary, we must seek to evaluate the conduct from counsel's perspective at the time, and must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance.

*United States v. Ashimi*, 932 F.2d 643, 648 (7th Cir. 1991) (citations and quotations omitted).

Should the petitioner satisfy the performance prong, he must then fulfill the prejudice prong by demonstrating "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *United States v. Starnes*, 14 F.3d 1207, 1209-10 (7th Cir. 1994). "In making the determination whether the specified errors resulted in the required prejudice, a court should presume . . . that the judge or jury acted according to law." *Strickland*, 466 U.S. at 694.

### C.     *Appellate Counsel was not Ineffective for Failing to Raise Sufficiency Arguments*

Defendant first challenges the sufficiency of the evidence on Counts 1-4. He claims that there was no evidence presented showing threats to injure the victims' reputations in Counts 1, 3, and 4, and no evidence that he used an "instrumentality of interstate commerce" for Count 2.

Defendant concedes that, because these challenges were not raised on direct appeal, they have been procedurally defaulted. (ECF No. 350-1 at 1). But the procedural default is a bit of a red herring. "An attack on the sufficiency of the evidence is not cognizable under § 2255." *United States v. Edun*, 750 F. Supp. 337, 338 (N.D. Ill. 1990). Even if Defendant could get around the procedural default, he couldn't bring the sufficiency claim through his habeas motion.

If Defendant has a § 2255 argument, it is that appellate counsel was ineffective for failing to raise the sufficiency issue on appeal. The *Strickland* standard applies to ineffective assistance of appellate counsel claims, with the additional gloss that a claimant must show "appellate counsel

3

failed to raise an issue that was both obvious and clearly stronger than the issues he did raise." *Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009) (citation omitted). "[C]ounsel is not required to raise every nonfrivolous issue on appeal." *Brown v. Finnan*, 598 F.3d 416, 425 (7th Cir. 2010).

Counts 1 and 2 relate to Defendant's "sextortion" of JH. In December 2017, then 17-year-old JH received a message from Defendant via the Facebook page of "Emily Schwartz." The message contained a picture of JH in just a bra. Acting through a second Facebook page, this time of "John Ron", Defendant told JH that he had more pictures and directed JH to text him at a number ending in 3428.

Defendant told JH that if she did not send "more nudes," he would leak 30 images he had of her to her Facebook friends and online. JH sent Defendant a message "begging" him to stop, stating that she was "literally breaking down" and did not want her "nudes out in the open." Defendant, in turn, told JH to record a five-minute video of herself engaging in sex acts. When JH refused, Defendant posted pornographic images of JH online.

Count 3 relates to RN. Also in December 2017, she received a message from Defendant, this time using the Facebook account of "Quinton Sayger." The message contained a semi-nude image of RN from when she was a minor. RN was directed to text the same phone number as JH. Defendant told RN that he would not share her photos if she "played along." When RN did not send more images, Defendant posted the pictures he had of RN online.

Count 4 relates to BA. She was contacted by Defendant the same day as he contacted RN, also through the Sayger Facebook account. Defendant again directed her to contact the same phone number, again told BA he had nude photos of her, and again told BA that he would post nude photos of her online if she did not share more. When BA did not respond, Defendant posted BA's images online.

With that factual background, the Court can move to Defendant's claims of error. Both sufficiency claims argue that the Government failed to present evidence to support a conviction under 18 U.S.C. § 875(d). That statute provides:

> Whoever, with intent to extort from any person, firm, association, or corporation, any money or other thing of value, transmits in interstate or foreign commerce any communication containing any threat to injure the property or reputation of the addressee or of another or the reputation of a deceased person or any threat to accuse the addressee or any other person of a crime, shall be fined under this title or imprisoned not more than two years, or both.

*Id*. Defendant first attacks the requirement that the Government prove that he threatened to injure the "reputation" of the victims. He concedes that the messages to the victims contain threats but argues that there was no threat to the victims' reputations.

As appellate counsel made clear in his correspondence with Defendant (*see* ECF No. 350-1 at 44), sufficiency of evidence arguments face an uphill battle on appeal. The threshold inquiry, which is "necessarily rigorous," is whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Curtis*, 324 F.3d 501, 505 (7th Cir. 2003). The Seventh Circuit will reverse "only if the record is devoid of evidence from which a reasonable jury could find guilt beyond a reasonable doubt." *Id*.

Given that standard, the Court cannot say that the sufficiency argument was either "obvious" or "clearly stronger" than the issues raised. The Court interprets Defendant's first argument as semantic. He essentially argues that, because he did not expressly threaten to harm the victim's reputations, he did not violate the statute. (ECF No. 350-1 at 3) ("The text messages sent to the victims contain threats. But they do not contain threats to injure the reputations of the victims."). But that's not legally correct. *See United States v. Killen*, 729 Fed. App'x. 703, 715 (11th Cir. 2018) (finding a violation of 18 U.S.C. § 875(d) where the defendant "asked teenage

boys for photos; was refused; then threatened he would post the nude photos he had already received on social media platforms if more were not sent").

Nor, the Court finds, is it correct as a matter of common sense. Defendant was not threatening to distribute vacation photos, family photos, or some other depiction of otherwise innocuous conduct. He specifically chose nude, graphic, and explicit photos for a reason. And that reason is the same for every deviant that participates in sextortion, revenge porn, and other forms of virtual sexual assault—to portray the victims as promiscuous and otherwise outside of societal norms. Stated another way, the reason is to injure their reputations. No other reason exists.

Defendant's authority to the contrary does nothing to move the needle. Defendant tries to characterize his threats as "ambiguous," relying on *United States v. Landham*, 251 F.3d 1072 (6th Cir. 2001). That case dealt with so-called "true threats." The Sixth Circuit concluded that a threat by a father, made in the context of a custody battle, that his ex-wife would "not have [their child] by her second birthday" was not a threat to kidnap under 18 U.S.C. § 875(b). *Landham*, 251 F.3d at 1081. The Sixth Circuit concluded that, because the threat was ambiguous, and because the defendant could not "kidnap" his child under state or federal law, that the indictment was deficient. *Id*. at 1081-82.

*Landham* and cases like it deal with ambiguity in terms of the object of the threat—that is, the act that is being threatened. There is no such ambiguity here. There is no question what Defendant threatened. His threats to release nude photographs of the victims was clear and unambiguous. There is no circumstance where the Court could conclude that his was not a "true threat."

Instead, what Defendant claims was ambiguous was intent. But intent "must be left to the trier of fact alone." *Sandstrom v. Montana*, 442 U.S. 510, 523 (1979). Here, the jury properly

6

considered the threatened acts and the testimony of the victims and concluded that the threats were to damage the victims' reputations. The Court finds that, based on the above evidence, the jury had ample evidence to make that determination. The Court cannot, and will not, say that appellate counsel's performance fell below an objective standard of reasonableness for failing to argue sufficiency of the evidence on these counts.

Defendant fares no better on his interstate commerce claims. On this count, the evidence was that Defendant oversaw "computer security" at his employer, meaning that if anyone had issues with their computer, he would fix them. Also, the scheme that Defendant perpetrated involved the sophisticated use of computers. He told FBI agents that he had found a "glitch" that allowed him to reactivate dormant emails. He used that glitch to access, and then take over, email and Facebook accounts. The scheme also involved the use of a virtual private network ("VPN") and text apps.

Based on that evidence, the Government argues that a reasonable juror could conclude that Defendant knew his scheme involved the internet, and further that, by using the internet, his scheme would use an instrumentality of interstate commerce. The Court agrees. Defendant did not feign ignorance of the interstate nature of the internet at trial and will not be heard to do so now. He was a sophisticated fraudster. He cannot disclaim that sophistication now.

Defendant argues that this line of reasoning is "foreclosed" by *Ruan v. United States*, 597 U.S. 450 (2022), where, in a prosecution under the Controlled Substances Act, the Supreme Court rejected an attempt by the Government to base scienter on "the mental state of a hypothetical 'reasonable' doctor, not on the mental state of the defendant himself." *Id*. at 465. But that's not what the Government attempts. The Government does not argue, nor does the Court find, that the jury could base its determination on the interstate commerce element on the mindset of the

7

"reasonable" IT professional. Rather, the Government proved that **Defendant** had the expertise, knowledge, and intent to use an instrumentality of interstate commerce to commit his crimes. Appellate counsel's performance was not objectively unreasonable.

But even if his sufficiency claims had arguable merit, and they don't, Defendant has not shown IAC. As the Government notes, Defendant's appellate counsel researched and raised six claims of error on appeal. Defendant does not discuss those claims, their relative merits, or why his specious sufficiency claims were "clearly stronger" than the issues raised. "This process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986). In the absence of any argument from Defendant showing why these claims related to the evidence were both "obvious" and "clearly stronger" than the arguments raised, the Court will not find IAC.

**D.**     ***Defendant was not Prejudiced by the Introduction of Evidence on Counts 1 Through 4***

Premised on the mistaken belief that his first claim of error would be successful, Defendant next argues that evidence related to Counts 1 through 4 should not have been admitted, and that he was prejudiced by that admission with respect to Counts 5 and 6. This argument is almost certainly procedurally barred, and Defendant does not argue that his appellate counsel was ineffective for failing to raise it. In any event, Defendant concedes that this claim only has merit if the Court agreed that the Government failed to introduce sufficient evidence to support Counts 1 through 4. (ECF No. 350-1 at 10) (arguing that his claim was not procedurally barred because it required "the resolution of claim I above"). Defendant did not prevail on that claim, so he does not prevail on this one.

**E.    *This Court Cannot, and Will Not, Review a Decision by the Seventh Circuit***

In his boldest assertion of error, Defendant asks this Court to declare that the Seventh Circuit violated his due process rights by refusing to consider the merits of his belated, mid-trial motion to suppress. Defendant misunderstands the hierarchy of federal courts.

"If the petitioner raised the claim on direct appeal, the 'law of the case' doctrine dictates that a Circuit Court of Appeals' decision becomes binding when that defendant later raises the same claim through a § 2255 motion to vacate, set aside or correct a sentence." *Walton v. United States*, Case No. 20-cv-1051-pp, 2021 WL 2188467, at *5 (E.D. Wisc. May 28, 2021); *citing Fuller v. United States*, 398 F.3d 644, 648 (7th Cir. 2005). "Review, by appeal, by writ of error, or otherwise, from the existing circuit courts shall be had only in the supreme court of the United States." *United States v. Jahn*, 155 U.S. 109, 111 (1894).

If the Seventh Circuit erred in its decision on Defendant's appeal, only the Supreme Court can so declare. But the Supreme Court denied Defendant's petition for writ of certiorari. The Seventh Circuit's decision is now the law of the case, binding on this Court. This Court has nothing else to do, and Defendant cannot prevail on this claim of error.

**F.    *Defendant Cannot Present a Fourth Amendment Claim Now***

Part and parcel of the previous claim, Defendant asks the Court to revisit his belated, mid-trial motion to suppress. The basis of that motion, in summary, was that law enforcement did not get consent to search his work computer because consent was given by Michael Burns, Defendant's sales manager, not Dan Burns, Defendant's boss. Defendant argues that he can raise the issue now because he didn't know the wrong Burns consented until mid-trial.

But, as Defendant recognizes, he has a problem. *Stone v. Powell*, 428 U.S. 465 (1976), as applied to motions under 28 U.S.C. § 2255 by *Brock v. United States*, 573 F.3d 497 (7th Cir. 2009),

9

prevents Defendant "from bringing this § 2255 motion solely on the ground that newly discovered evidence would have triggered the exclusionary rule if presented earlier." *Brock*, 573 F.3d at 501. This is true because, the Seventh Circuit concluded, the deterrent purpose of the Fourth Amendment's exclusionary rule is not served post-trial. *Id*. "Police misconduct will not be materially checked by fear that Fourth Amendment violations that go undiscovered during trial, appeal, and the three-year time period to file a motion for a new hearing, Fed. R. Crim. P. 33(b), will be discovered and used in a § 2255 motion, at least when there is no allegation that the officers prevented the defendant from finding the evidence." *Id*.

Defendant argues that he is relieved from the *Stone* bar because the Seventh Circuit did not review the merits of the suppression issue. (ECF No. 350-1 at 16). The Court cannot agree. Defendant relies on *Stone*'s discussion of the opportunity for "full and fair litigation of a Fourth Amendment issue," but *Brock* takes a limited view of what "full and fair litigation" requires. That Court explained that the right to full and fair litigation "simply refers to the right to have a judge listen to and consider the evidence a party actually presents at trial. It is the right to have a judge who has not closed his mind to the issues, is not bribed or sleepwalking, and is not in some other obvious way subverting the hearing." *Brock*, 573 F.3d at 501. Indeed, the Seventh Circuit rejected the notion that the right to full and fair litigation "requires that the evidence necessary to make the party's best claim be available by the time of trial." *Id*.

But even if *Brock* permitted a Fourth Amendment claim to be presented on a § 2255 motion in the event of newly discovered evidence, that exception would not apply here. As the Government notes, Defendant was given a copy of a FD-302 form that summarized the FBI's search and seizure of Defendant's work computer as part of discovery. (ECF No. 357-1). That form

is clear that "[Michael][1] Burns consented to allowing the interviewing Agents to take the work desktop computer from [Defendant's] office and have it examined." (*Id*. at 2). If Defendant learned of Michael Burns' consent for the first time at trial, as he now claims, it's only because he didn't read his own discovery.

What Defendant is experiencing are the real-world consequences that he was warned of when he elected to proceed pro se. The ability to read and understand discovery materials, and to make timely objections based on those materials, are the hallmarks of criminal defense advocacy. Defendant, understandably, lacked those skills. But that's not a basis for relief. Defendant cannot raise his Fourth Amendment claim now, and his request for relief based on that claim is denied.

### G. *Defendant's Appellate Counsel was not Ineffective for Failing to Raise the Lack of an Evidentiary Hearing on the Voluntariness of his Confession*

Defendant next argues that his appellate counsel was ineffective when he failed to make the argument that Defendant did not receive a hearing on one of his many suppression motions. He argues that he should have received the hearing related to his voluntariness argument, despite repeatedly disclaiming the need for such a hearing previously. The Court does not find that this claim has merit, much less was significantly stronger than the issues that were raised, and will deny Defendant's request for relief.

In March 2020, Defendant moved to suppress his statements to agents, arguing that they were not voluntary. (ECF No. 109). This motion came after the Court denied a prior request to suppress the statements under the theory that agents had violated Defendant's *Miranda* rights. (ECF No 95). Defendant asked for an evidentiary hearing within his motion "so that the additional

---

[1] Defendant argues that he assumed, based on his knowledge of company hierarchy, that the reference to "Burns" in the FD-302 meant Dan Burns, not Michael. (ECF No. 358 at 6). But such an assumption would be illogical and unfounded, and Dan Burns is not referenced anywhere in the document.

applicable circumstances can be determined from the further testimony of Agents Stewart and Gass and any other evidence related to the question of voluntariness." (ECF No. 109 at 4).

After reviewing the motion, the Court issued an order requesting additional briefing. (ECF No. 119). The Court noted that, although the voluntariness and *Miranda* issues were related, they could require separate hearings. (*Id*. at 1). But the Court noted that it had read the transcript of the hearing related to the *Miranda* motion, all 126 pages, and found that the circumstances surrounding the questioning "were developed at length." (*Id*. at 2). So, in an effort to avoid an unnecessary waste of court resources, the Court asked Defendant to submit a brief focused on "what additional evidence he would anticipate introducing at the hearing and what, if any, factual disputes remain following the initial hearing." (*Id*.).

Defendant filed the requested brief. (ECF No. 126). There, he repeatedly disclaimed the need for a hearing, stating:

- "I don't believe an evidentiary hearing is necessary since the Court can easily conclude my statements were directly caused by coercive police conduct and thus involuntary." (*Id*. at 3).

- "The only reason an evidentiary hearing would be necessary is if the Court desired evidence of my specific characteristics which allowed me to be coerced by these tactics or further evidence that the coercive tactics occurred. However, I argue that this is unnecessary because the evidence already on the record indicates my will was overcome even without any additional evidence towards that finding." (*Id*. at 4).

- "Since the Government did not argue any information other than what is already on the record then there is no reason for an evidentiary hearing . . ." (*Id*. at 4-5).

- "Clearly a hearing is not necessary to determine a confession as involuntary." (*Id*. at 5).
- "Defendant asserts that the Government has failed to meet its burden of proving his statements were voluntary and uncoerced , and in that regard an evidentiary hearing is unnecessary." (*Id*. at 6).

The Court accepted Defendant's representations and found that no hearing was necessary. (ECF No. 127). It then denied the motion to suppress. (ECF No 128). Specifically, the Court found that neither the statements of the agents, nor the overall circumstances of his questioning, called the voluntariness of his statements into question.

Defendant moved to reconsider the denial. (ECF No. 132). As to the decision not to order a hearing, Defendant continued to disavow the need for a hearing, stating that he "still believe[d] an evidentiary hearing [was] unnecessary" and that holding one "would serve no purpose." (*Id*. at 7). Defendant's only claim for a hearing was his unsupported claim that a hearing was necessary before his motion could be denied. The Court denied the motion to reconsider. (ECF No. 135). On the hearing issue, the Court cited Defendant's continued statements that a hearing was not necessary, as well as Defendant's failure to identify an evidentiary dispute that would require a hearing to resolve. (*Id*. at 4).[2]

With that background, the Court can address the legal merits of Defendant's claim. A defendant bears the burden of showing the need for an evidentiary hearing on a motion to suppress. *United States v.* Jones, 56 F.4th 455, 476 (7th Cir. 2022). A hearing is required only "when a substantial claim is presented and there are disputed issues of material fact that will affect the

---

[2] Defendant asserts that the Court denied the motion to suppress by saying that he "couldn't have it both ways." (ECF Ni. 350-1 at 17). The Court said nothing of the kind in its order denying the motion to suppress or the motion to reconsider. This kind of reimagining of the factual and procedural history of this case is entirely consistent with the Court's experience with Defendant.

outcome of the motion." *United States v. Curlin*, 638 F.3d 562, 564 (7th Cir. 2011). To receive an evidentiary hearing, the defendant's "allegations and moving papers must be 'sufficiently definite, specific, non-conjectural and detailed'" to show that his claim is substantial and that there are material factual disputes. *Id.* at 564, quoting *United States v. McGaughy*, 485 F.3d 965, 969 (7th Cir. 2007).

Defendant's repeated assertions that a hearing was unnecessary aside, he never alleged facts that, if proven, would entitle him to relief. When asked to identify the facts he would introduce at a hearing and what, if any, evidentiary disputes existed, Defendant responded with only vague categories of evidence. He stated he would "anticipate questioning Agents Stewart and Gass more specifically about questions asked and statements made prior to giving them information." (ECF No. 126 at 5). He added that he intended to "elicit testimony as to why [he] actually began giving information to the agents," and would also "present physical evidence supporting the claims in [his] motion." (*Id.*). This was the extent of the "facts" alleged.

That's not enough. "Questioning the evidentiary basis for the government's factual assertions is not the same as identifying specific, disputed facts." *United States v. Dixon*, --- F. 4th ---, 2025 WL 1322581, at *11 (7th Cir. 2025). A series of broad categories of evidence that might be presented at a hearing is just that—a series of categories. They are not clearly articulated factual disputes and are not worthy of a hearing. *United States v. Harris*, 914 F.2d 927, 933 (7th Cir. 1990).

And, again, even if Defendant were entitled to a hearing, he has not shown IAC. Appellate IAC is a relative analysis; the omitted issue must be "both obvious and clearly stronger than the issues [counsel] did raise." *Smith*, 565 F.3d at 352. Defendant does not discuss the issues that counsel did raise on appeal or attempt to show why the hearing issue—one he repeatedly

14

disclaimed over multiple filings---was clearly stronger than those issues. Without that showing, the independent merits of his hearing argument are irrelevant.

**H.    *Appellate Counsel was not Ineffective for Failing to Raise Defendant's* Carpenter-*Related Arguments***

Finally, Defendant argues that his appellate counsel was ineffective for failing to argue that a subpoena under the Stored Communications Act to Facebook was a warrantless search under *Carpenter v. United States*, 585 U.S. 296 (2018). The Court has addressed the merits of Defendant's legal argument related to *Carpenter*. (ECF No. 140). Defendant adds nothing to the analysis now, arguing only that his rejected arguments "could have been very easily repurposed into the appeal." (ECF No. 350-1).

The Court finds a *Carpenter*-related argument to be meritless for the same reasons previously announced. And, yet again, Defendant offers no comparative analysis as to why this claim would have been clearly stronger than those that were raised. The Court denies relief on this ground.

**III.    Certificate of Appealability**

Under Rule 11 of the Rules Governing Section 2255 Proceedings, the Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Rule 11 of Rules Governing Section 2255 Proceedings. The substantial showing standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotation marks omitted); *Barefoot v. Estelle*, 463 U.S. 880,

15

893 & n.4 (1983). Because the Court finds that no reasonable jurist could conclude that Defendant is entitled to relief, no certificate of appealability will be issued.

## IV. Conclusion

For these reasons, Defendant's motion to vacate (ECF No. 350) is DENIED. No certificate of appealability will issue.

SO ORDERED on June 11, 2025.

                                            s/ *Holly A. Brady*
                                            CHIEF JUDGE HOLLY A. BRADY
                                            UNITED STATES DISTRICT COURT